## Lawrence Purvis, Appellant, v. Irving Shuman, Appellee.

COVENANTS, § 18*—*what is personal covenant not running with land.* A covenant in a lease, whereby the lessor of land agrees to purchase at the expiration of the lease improvements made on the land by the lessee at a certain percentage of the original cost is a personal covenant, and does not run with the land so as to bind the lessor's grantee.

Appeal from the Circuit Court of Moultrie county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed October 13, 1915.

**Statement by the Court.** This is a suit in assumpsit brought by Lawrence Purvis against Irving Shuman. The declaration consists of a special count and avers that on April 9, 1907, Sam T. Miller, being then the owner of certain described lands: "In consideration that the *plaintiff*, at the request of Sam T. Miller, the then owner of  *  *  *" (certain described lands) "would let to the *defendant* the certain tract of land above described with the appurtenances there situate, to hold the same to the *defendant,* as tenant thereof to the plaintiff, from the 1st day of March, 1907, to, towit, the 1st day of March, 1912, the said Sam T. Miller promised the plaintiff that he, the said Sam T. Miller, would purchase from the plaintiff, at the expiration of the said lease, any and all improvements that may be put upon the said premises by the plaintiff for the purpose of carrying out the provisions of the said lease, at seventy-five per cent. of the original cost of the said improvements; that the said lease so entered into between the said Sam T. Miller and the plaintiff was in words and figures as follows" (The lease is inserted at length, the material provisions are): "This Indenture made this 9th day of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

April, 1907 between  *   *   *.  That the party of the said first part in consideration of the covenants of the second party hereinafter set forth does by these presents lease to the said second party the following described real estate   *   *   *   to have and to hold to the said second party for the period of five years from the first day of March, 1907, and the said second party in consideration of the leasing of the premises as above set forth covenants and agrees to pay   *   *   *   the sum of two hundred dollars per annum   *   *   *   that said second party will not sublet, etc.   *   *   *.  It is further mutually agreed between the parties that the party of the second part has leased said premises as an amusement park and that the party of the second part is entitled to all rents and privileges that he may be able to receive from parties desiring to use the same for a ball park, race meetings or other similar forms of amusement.

"It is further agreed between the parties hereto that any and all improvements that may be put on said premises by the party of the second part for the purpose of carrying out the provisions of this lease, will at the expiration of this lease be purchased by the party of the first part at seventy-five per cent. of the original cost of said improvements.   *   *   *  party of the second part is to have the option of purchasing said premises at any time within the period covered by this lease at such price as may be agreed upon   *   *   *.  The covenants herein shall extend to and be binding upon the heirs, executors and administrators of the parties to this lease."

It further avers that the lease was recorded on March 6, 1909; that plaintiff entered into possession of said premises under said lease; that for the purpose of carrying out the provisions of said lease he constructed extensive improvements at the original cost of $8,255.95; that said Miller, while plaintiff was so in possession and after the recording of said lease, sold and conveyed said premises in 1909 and 1910, to de-

fendant by warranty deeds in which the consideration is stated to be $1, subject however to a mortgage of $8,000 (part of the premises being conveyed through a third party); avers that defendant, by virtue of said conveyance to him, became the owner of said premises subject to the rights of plaintiff, and that under the provisions of the lease and section 15 of chapter 80 of the Statute of Illinois (J. & A. ¶ 7053), it became the duty of defendant on March 1, 1912, to purchase said improvements, but notwithstanding said duty, defendant on March 1, 1912, notified plaintiff to remove said improvements within a reasonable time and thereupon plaintiff demanded of defendant the payment of seventy-five per cent. of the original cost of said improvements which defendant refused to pay, and afterwards, having obtained a judgment against said Miller, caused an execution to be levied on said improvements as the property of Miller, and caused the said improvements to be sold, and defendant has refused to pay to plaintiff seventy-five per cent. of the cost of said improvements or any part thereof, to the damage, etc. A general demurrer was sustained to the declaration and the plaintiff, abiding by the declaration, judgment was rendered for the defendant. The plaintiff appeals.

FRANK M. HARBAUGH, EDWARD C. CRAIG and DONALD B. CRAIG, for appellant; JAMES W. CRAIG, of counsel.

WHITAKER, WARD & PUGH and SIMMONS & IRVING, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The question involved is whether the appellee, who purchased and accepted a deed of the premises described in the lease from Miller to appellant, can be held under the lease and the law applicable thereto for the payment of seventy-five per cent. of the cost of

the improvements placed on the premises by appellant during the term of the lease.

It is averred in the declaration that a judgment was obtained against Sam T. Miller and that said improvements were sold as the property of Miller under an execution issued on said judgment. Appellee in argument states that the said judgment was in favor of one John Miller, while appellant asserts it was in favor of appellee. The declaration is somewhat uncertain in that regard, but we do not regard such averment as material. It is also immaterial, that in the first part of the declaration the draftsman became confused and inserted the word "plaintiff" when the word "defendant" should have been used and vice versa, inasmuch as the demurrer is general and the lease and deeds are set up *in haec verba,* followed by proper averments. There is no provision in the lease requiring appellant to make any improvements on the land. The matter of making improvements was left optional with the appellant, and whatever improvements were placed on the premises by appellant were placed thereon after the execution of the lease.

The lease provides that all the covenants therein shall extend to and be binding upon the heirs, executors and administrators of the parties to the lease. It does not by its terms make the covenant of the lessor to pay seventy-five per cent. of the cost of the improvements to appellant at the termination of the lease, nor any other covenant therein, a covenant binding upon, or one that extends to the grantees or assignees of the parties, or either of them. There is therefore nothing in the wording of the lease under which of itself appellant can be held or required to carry out the covenants of Miller to pay said percentage of cost.

Appellant bases his right to recover on section 15 of chapter 80 of the Statute of Illinois (J. & A. ¶ 7053) which is: "The lessees of any lands, their assigns or

personal representatives, shall have the same remedy, by action or otherwise, against the lessor, his grantees, assignees or his or their representatives, for the breach of any agreement in such lease, as such lessee might have had against his immediate lessor; Provided, this section shall have no application to the covenants against incumbrances, or relating to the title or possession of the premises demised.''

This statute was enacted in 1873. There has been in force in this State, from its organization as such, a statute which provides: ''That the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, excepting the second section of the sixth chapter of 43d Elizabeth, the eighth chapter of 13th Elizabeth, and the ninth chapter of 37th Henry Eighth, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority.'' Chapter 28, Hurd's St. (J. & A. ¶ 2222); Statute 1845, page 337; Sess. Laws, 1819, page 3; Virginia Act 1776.

Section 15 of chapter 80 is a re-enactment of section 2 of chapter 34 of the English Statute of 32nd Henry VIII. Section 14 of chapter 80 of the Statute of Illinois (J. & A. ¶ 7052), which gives to grantors of demised lands or assignees of lessors the same remedies as the grantor or lessor might have had, if such reversion had remained in the lessor or grantor, is a re-enactment of section 1 of the Statute of 32nd Henry VIII. A comparison of sections 14 and 15 of the Illinois statute and of sections 1 and 2 of the Act of Henry VIII shows that they are identical in substance, the Illinois act simply omitting much of the verbiage of the old English act. The Illinois act is nothing more

than a codification of the previously existing law in force in Illinois.

Before the enactment of sections 14 and 15 of chapter 80 of the Illinois statute, it was held in *Fisher v. Deering*, 60 Ill. 114, that section 1 of chapter 34 of 32nd Henry VIII was in force in Illinois, and that the Legislature in adopting it will be presumed to have intended to adopt the judicial construction that had been placed on that statute. In *Hansen v. Meyer*, 81 Ill. 321, a lease of a storeroom, on the first floor of a hotel building, provided that the tenant was to put in counters and shelving, which the lessor agreed to buy from the tenant at a reasonable price at the end of the first year. During the term of the lease the lessor sold the building and the tenant at the end of the year brought suit against the grantee of the lessor for the value of the improvements. The lease there, as in this case, mentioned heirs and executors, and nowhere mentioned assignees or grantees. The Supreme Court held that the covenant relating to things not *in esse* at the time the lease was made does not bind assignees not named in the covenant, and followed *Spencer's* case, 5 Coke 16, which construed the English act a few years after its passage. That construction became a rule of property which has been consistently followed in Illinois and other states.

In *Diederich v. Rose*, 228 Ill. 610, a lease provided that at its expiration, if the tenant should not succeed in obtaining a renewal, the party to whom the lessor may next make a lease shall be required to pay for the buildings on said premises. The lessor sold the premises, and in a suit against the purchaser to recover from him the value of the structures placed thereon by the tenant, it was held: "The right of a tenant to receive payment from a landlord for improvements placed on the demised premises during the term arises from no right or duty from the relation of landlord and tenant, but is always a matter of express contract,

and the tenant only has such rights as are given him by his contract. (*Gardner v. Watson,* 18 Ill. App. 386; *Watson v. Gardner,* 119 Ill. 312; *Mathes v. Dobschuetz,* 72 Id. 438.) The vendee cannot be held to pay for these improvements, as the lease does not so provide.''

The rule seems to be clear that ''all covenants relating to a subject-matter not *in esse,* such as for the erection of buildings upon the premises demised, are personal covenants and do not run with the land so as to bind the assignees unless they are expressly named therein.'' *Spencer's* case, 5 Coke 16; *Dewar v. Goodman,* [1908] 1 K. B. 94; Kerr on Real Property, sec. 1218; *Grey v. Cuthbertson,* 2 Chit. 42; Taylor L. T., sec. 260; Washburn on Real Property, sec. 680; Woods L. T. 500; 1 Smith L. C. 53; *Thompson v. Rose,* 8 Cow. (N. Y.) 266; *Norman v. Wells,* 17 Wend. (N. Y.) 136; *Etowah Min. Co. v. Wills Valley Min. & Mfg. Co.,* 121 Ala. 672; *Willcox v. Kehoe,* 124 Ga. 484; *Bream & Co. v. Dickerson,* 2 Humph. (Tenn.) 126; *Brewer v. Marshall,* 18 N. J. Eq. 337.

The covenant made by Miller to purchase from appellant all improvements he might place on the leased premises—the improvements not being in existence at the time the lease was executed—was a personal one and collateral to the demise and did not run with the land so as to bind the lessor's grantee. The assignees or grantees of Miller are not mentioned in the lease and are not bound by the covenants that are personal to Miller. There was no error in sustaining the demurrer. The judgment is affirmed.

*Affirmed.*